## Chicago City Railroad Company v. Considine.

1. Negligence—*Notice and Opportunity of Notice.*—In an action to recover for injuries received by being pushed off a car by other passengers, the plaintiff submitted the following special interrogatory: Did the conductor have any notice, or opportunity of notice, that the plaintiff was going to be pushed off the platform in time to have prevented it? To which the jury answered, "Yes." It was contended that by the answer the jury specially found the company knew of the danger, in carrying the plaintiff past the street where he was to get off. *It was held*

that the question being disjunctive in form, the answer applies equally to either part of it. The company either had notice or opportunity of notice. A party litigant can not divide the question and claim the answer to fit that part of it most favorable to himself.

2. NOTICE—*Opportunity of Notice.*—Opportunity of notice, if it be susceptible of definition, is a mere conclusion from opinion or conjecture, and does not apply to any corresponding or resulting duty. One may have opportunity to know a vast number of things, and not be bound to know any of them. What a man is bound to know he may be said to have notice of, but not so with what he merely has the opportunity of knowing.

3. NEGLIGENCE—*Permitting a Street Car to Become Crowded.*—Where a person left a seat in a street car, and while the car was in motion, forced his way upon a crowded platform and was pushed off of the car and injured, *it was held,* if the crowded condition of the platform had any tendency to cause appellee to be thrown off, and if it were mismanagement by the appellant to permit such a condition, yet appellee knew that condition and made his way into it. And whatever fault the appellant was guilty of in permitting the crowd, appellee, knowing the crowd was there, shared in it, and the fault being mutual, he can not complain if injury resulted.

**Memorandum.**—Case. In the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Declaration in case; plea of not guilty; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the March term, 1893. Reversed and remanded. Opinion filed June 29, 1893.

The opinion states the case.

WM. J. HYNES, attorney for appellant.

BRANDT & HOFFMAN, attorneys for appellee.

OPINION OF THE COURT, SHEPARD, J.

The appellee was a passenger on one of the cars of the appellant, drawn by horses, on a street in the city of Chicago. Archer avenue, on which the horse car was being drawn, runs in a southwesterly direction from its intersection with State street, and appellee lived on the northwesterly side of Archer avenue, opposite the north end of Emerald avenue. He was on his way home from down town, and boarded the car at the corner of Adams and State streets.

Appellee occupied a seat upon first getting aboard the car, but shortly afterward relinquished it to a lady for a few blocks, and after she left the car resumed the seat, at about Sixteenth street, and remained seated until the car got near to Emerald avenue.

According to his testimony the car seats, its aisles, the platforms and the steps became full and loaded with passengers, before Emerald avenue was reached. He sat "in the car not far from the rear end of it." As the car approached Emerald avenue, he says he got up and told the conductor to let him off at that street, and when about one hundred feet east of Emerald avenue he made his way out onto the platform, but the car did not stop, and the crowd pushed him off while the car was in motion, after it had passed Emerald avenue. In his own language, " The crowd pushed me. I was shoved off. I did not have a chance to get hold of anything. I whirled and fell around between the car and the sidewalk, and that is all I remember until I got to my house."

Continuing, appellee testified : " They (men) were standing on the platform. I was waiting for the car to stop to get off, and I was shoved off. I was standing on the platform, in from the steps a little. I was not on the step. There were men standing on the steps. I don't know how many. On the step in front of me. I was facing north to get off; there was a gate on the south side of the platform. I could not say how many there were on the platform back of me. It was loaded with people. The steps were full, I know that."

The argument for appellee proceeds upon the assumption that the wrongful act of appellant in carrying the appellee beyond his place of destination was the efficient cause of the injury, without which it could not have happened; that the appellant had knowledge of the danger into which appellee was being carried by being taken beyond Emerald avenue, and was liable, no matter what other causes operated to produce the injury.

A question on which a special finding by the jury was asked, was as follows :

" 3. Did the conductor have any notice, or opportunity of notice that plaintiff was going to be pushed off the platform, in time to have prevented it ? "

To which the jury answered " Yes."

It is argued that in this way the jury specially found that appellant knew of the danger in carrying appellee past Emerald avenue, and that it knew he was going to be thrown off the car in time to have prevented it.

Undoubtedly, if appellant knew that if it carried appellee past Emerald avenue he would be thrown off and injured, and had such knowledge in time to have prevented it, its liability would not be questioned. But such was not the finding of the jury. The question propounded to the jury was disjunctive in form, and the answer applies equally to either part of it. The appellee can not divide the question and claim the answer to fit that part of it most favorable to himself.

Epitomized, the question was, did appellant have notice, or opportunity of notice; and the answer was, it had notice or opportunity of notice. Which was it ? Notice is a fact. Opportunity of notice, if it be susceptible of definition, is a mere conclusion from opinion or conjecture, and does not imply any corresponding or resulting duty. One may have opportunity to know a vast number of things, and not be bound to know any of them. What a man is bound to know he may be said to have notice of, but not so with what he merely has the opportunity of knowing.

It appears that Halsted street is a very short block west of Emerald avenue, and there being a horse-car line on Halsted street, the Archer avenue cars stop just before reaching the east line of the Halsted street crossing, to enable passengers to change cars, and that there is frequently at the hours of the day when the traffic is large, a good deal of haste or rushing by the passengers from one car line to the other.

The most that can be said to have been established by the evidence concerning any notice, or opportunity of notice, to appellant of any danger to passengers in the hurrying or

rushing from the Archer avenue cars to the Halsted street cars, is that it was the usual habit of such passengers as were in a hurry. The evidence does not disclose that a passenger was ever before thrown off or otherwise injured from that cause at that point, and we can not think that the jury by their special finding already referred to, meant to say that appellant had notice in time to have prevented it, that appellee was going to be pushed off the platform. And as already stated, their finding that the appellant had " opportunity of notice" is too vague and conjectural to support the' fact of notice.

The jury specially found that appellee was crowded off the platform by a rush of other passengers. The crowd was on the platform long before Emerald avenue was reached, and before appellee went into it.

The failure to stop the car at Emerald avenue had, in itself, no tendency to throw appellee off the car. It was at most mere negligence in appellant not to have stopped the car at the point where appellee desired to leave it, and appellant was liable only for such consequences as were the proximate result of not stopping it.

The accident was the direct result of the sudden pressure by some of the passengers to get off the car as it approached Halsted street, and not because the car had passed Emerald avenue without stopping, or because of any other negligence, if it be negligence, by the appellant, than that it permitted the car to become crowded with passengers.

We do not hold that it was of itself negligence on the part of the appellant to permit the car to become crowded with passengers, nor that it was, of itself, negligence for the appellee to force himself from his seat into the crowd on the platform, while the car was in motion, for the purpose of alighting.

But if the crowded condition of the platform had any tendency to cause appellee to be thrown off, and if it was mismanagement by the appellant to permit such a condition, yet appellee knew that condition and made his way into it.

And whatever fault the appellant was guilty of in per-

mitting the crowd, appellee, knowing the crowd was there, shared in it, and the fault being mutual, he can not complain if injury resulted because of the sudden movements of one or more of the passengers, for no cause for which the appellant was directly responsible. Appellee testified that he rode in the cars every day, and had ridden in them when they were loaded more times than he could tell. He must therefore be presumed to have been familiar with the method in which the cars were operated.

We regard the case as falling within the rules stated in Quinn v. I. C. R. R. Co., 51 Ill. 495.

The judgment of the Circuit Court will be reversed and the cause remanded.